**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>$37,564,565.25 in ACCOUNT NUMBER XXXXXXXX9515 AT MORGAN STANLEY, IN THE NAME OF ANICORN LLC,<br><br>$21,113.21 in ACCOUNT NUMBER XXXXXX9537 AT WELLS FARGO, N.A., IN THE NAME OF ARTEMUS GROUP, LLC,<br><br>$25,002,568.63 in ACCOUNT NUMBER XXXXXX1078 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C., and<br><br>$11,314,205.00 in ACCOUNT NUMBER XXXXXX9974 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C.,<br><br>     Defendants *in rem*. | Civil Action No. 18-cv-2795-CKK<br><br><br>**Oral Hearing Requested** |

**CLAIMANTS' MOTION TO DISMISS GOVERNMENT'S
VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Claimants Anicorn, LLC, Artemus Group, LLC, and Prakazrel "Pras" Michel (collectively, "Claimants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b) and Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G(5)(b), move to dismiss the Government's Verified Complaint for Forfeiture *In Rem* as to the following defendants *in rem*:

    a.    $37,564,565.25 in bank funds seized from Account Number XXXXXXXX9515 at Morgan Stanley, held in the name of Anicorn, LLC, on March 9, 2018; and

b.      $21,113.21 in bank funds seized from Account Number XXXXXX9537 at Wells

Fargo Bank, N.A., held in the name of Artemus Group, LLC, on July 2, 2018.

The grounds for dismissing the Government's Verified Complaint for Forfeiture *In Rem*

are set forth in the Memorandum of Points and Authorities attached hereto and incorporated herein

by reference.

Claimants request an oral hearing on this motion.

Dated: January 28, 2019          Respectfully submitted.
      Washington, D.C.

                                  s/ Barry J. Pollack
                                  Barry J. Pollack (D.C. Bar #434513)
                                  ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                    UNTEREINER & SAUBER LLP
                                  2000 K Street, N.W., 4th Floor
                                  Washington, DC 20006
                                  Telephone:      (202) 775-4500
                                  Facsimile:      (202) 775-4510
                                  Email:           bpollack@robbinsrussell.com

                                  *Counsel for Claimants Anicorn, LLC, Artemus Group, LLC, and Prakazrel Michel*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|      Plaintiff, | Civil Action No. 18-cv-2795-CKK |
| v. | |
| $37,564,565.25 in ACCOUNT NUMBER XXXXXXXX9515 AT MORGAN STANLEY, IN THE NAME OF ANICORN LLC, | **Oral Hearing Requested** |
| $21,113.21 in ACCOUNT NUMBER XXXXXX9537 AT WELLS FARGO, N.A., IN THE NAME OF ARTEMUS GROUP, LLC, | |
| $25,002,568.63 in ACCOUNT NUMBER XXXXXX1078 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C., and | |
| $11,314,205.00 in ACCOUNT NUMBER XXXXXX9974 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C., | |
|      Defendants *in rem*. | |

**CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS
THE GOVERNMENT'S COMPLAINT FOR FORFEITURE *IN REM***

**TABLE OF CONTENTS**

                                                                              **Page**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ...................................................................................... 1

STATEMENT ............................................................................................. 2

    A.   The Complaint's allegations ......................................................... 2

    B.   Procedural background.................................................................. 6

LEGAL STANDARD.................................................................................. 6

ARGUMENT .............................................................................................. 7

    I.   Count One should be dismissed because the Complaint does not adequately allege that the funds in the Claimed Accounts are proceeds of specified unlawful activity................................................................................................. 8

        A.   The Complaint does not adequately allege the commission of any specified unlawful activity or the existence of a conspiracy.................................................. 8

            1.   Count One fails to state the offense of bank fraud ........................................ 8

            2.   Count One fails to state the offense of making false statements to a financial institution...................................................................................... 9

                i.   The allegations of false statements are insufficient under the relevant heightened pleading standards ............................................. 10

                ii.   The Complaint fails altogether to allege that the purported falsities made to City National Bank and to Morgan Stanley were made to influence a lending decision ......................................... 12

            3.   The Complaint fails to state the offense of conspiracy to commit bank fraud or to make false statements to a financial institution......................... 13

        B.   The Claimed Accounts are not alleged to be proceeds of the alleged offense conduct............................................................................................... 14

    II.   The Complaint's failure to allege that the Claimed Accounts are proceeds of specified unlawful activity requires dismissal of the remaining counts. .................... 15

CONCLUSION............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................7

*Carpenter v. United States,*
  484 U.S. 19 (1987).......................................................................................9

*Shaw v. United States,*
  137 S. Ct. 462 (2016)................................................................................8, 9

*United States v. $39,000 In Canadian Currency,*
  801 F.2d 1210 (10th Cir. 1986) ...............................................................14

*United States v. All Assets Held at Bank Julius Baer & Co.,*
  571 F. Supp. 2d 1 (D.D.C. 2008) ...............................................................6

*United States v. Attick,*
  649 F.2d 61 (1st Cir. 1981)......................................................................12

*United States v. Boren,*
  278 F.3d 911 (9th Cir. 2002) ...................................................................13

*United States v. Devoll,*
  39 F.3d 575 (5th Cir. 1994) .....................................................................13

*United States v. Gaudin,*
  515 U.S. 506 (1995)..................................................................................10

*United States v. Krilich,*
  159 F.3d 1020 (7th Cir. 1998) .................................................................13

*United States v. Krown,*
  675 F.2d 46 (2d Cir. 1982)........................................................................13

*United States v. Lewis,*
  67 F.3d 225 (9th Cir. 1995) .......................................................................9

*United States v. Naegele,*
  341 B.R. 349 (D.D.C. 2006) ...............................................................10, 12

*United States v. One Gulfstream G-V Jet Aircraft,*
  941 F. Supp. 2d 1 (D.D.C. 2013)......................................................6, 7, 14

*United States v. Rowe*,
    56 F.2d 747 (2d Cir. 1932) ............................................................................................9

*United States v. Safavian*,
    528 F.3d 957 (D.C. Cir. 2008) .....................................................................................12

*United States v. Wynn*,
    61 F.3d 921 (D.C. Cir. 1995) .......................................................................................14

*Whittle v. Proctor & Gamble*,
    No. 1:06-CV-744, 2007 WL 4224360 (S.D. Ohio Nov. 27, 2007) ...............................14

*Williams v. United States*,
    458 U.S. 279 (1982) ...............................................................................................9, 13

**Statutes and Rules**

18 U.S.C. § 981(a)(1) ...........................................................................................................5

18 U.S.C. § 981(a)(1)(C) ......................................................................................................8

18 U.S.C. § 981(a)(2) .........................................................................................................15

18 U.S.C. § 981(a)(2)(A) ....................................................................................................15

18 U.S.C. § 1001 ................................................................................................................12

18 U.S.C. § 1014 ..............................................................................................1, 9, 12, 13

18 U.S.C. § 1344 ..................................................................................................................1

18 U.S.C. § 1956 ..................................................................................................................1

18 U.S.C. § 1956(a)(1) .........................................................................................................5

18 U.S.C. § 1956(a)(1)(B)(i) ...............................................................................................5

18 U.S.C. § 1956(a)(2)(B) ...................................................................................................5

18 U.S.C. § 1956(a)(2)(B)(i) ...............................................................................................5

18 U.S.C. § 1956(c)(7) ..................................................................................................13, 16

Fed. R. Civ. P. 9(b) ..............................................................................................................7

Fed. R. Civ. P. Supp. R. A(2) ..............................................................................................6

Fed. R. Civ. P. Supp. R. G(1) ..............................................................................................7

Fed. R. Civ. P. Supp. R. G(2)(f) ....................................................................................................6

**Other Authorities**

Fed. R. Civ. P. Supp. R. G Advisory Committee Note.................................................................7

H.R. Rep. No. 91-1556 (1970)...................................................................................................13

## INTRODUCTION

Through its complaint for forfeiture *in rem* (the "Complaint"), the Government seeks to divest Claimants Anicorn, LLC, Artemus Group, LLC, and Prakazrel "Pras" Michel of their lawful ownership of and possessory interests in two bank accounts containing approximately $37.6 million (the "Claimed Accounts").  Although the Complaint asserts a variety of legal theories, each is ultimately grounded on the premise that the funds held in the Claimed Accounts constitute, or are derived from, proceeds traceable to bank fraud (18 U.S.C. § 1344) and false statements to a financial institution (18 U.S.C. § 1014), which are defined as "specified unlawful activity" under 18 U.S.C. § 1956.  Because the Complaint's factual allegations do not state either the offense of bank fraud or false statements to a financial institution, each forfeiture count should be dismissed for failure to state a claim for which relief can be granted.

The Complaint alleges that the Section 1344 and Section 1014 offenses each entailed false statements made to financial institutions that were allegedly designed to conceal the true source of funds that had been deposited, or were being deposited, with that institution.  These allegations, however, fail to state the offense of bank fraud, which necessarily involves a scheme to *deprive* a bank of property, not a scheme to *deposit* funds with the bank.  Likewise, these allegations fail to state the offense of false statements to a financial institution, which necessarily requires false statements made to influence an action of the financial institution with respect to a lending decision.

Further, even if the Complaint adequately alleged the specified predicate offenses, its forfeiture claims would still fail.  The Complaint does not adequately allege that the Claimed Accounts contain proceeds that are traceable to the alleged offenses.  The alleged false statements

to the banks did not themselves generate any proceeds.  The funds, therefore, cannot be said to be proceeds of the alleged bank fraud and false statements offenses.

For all of these reasons, the Complaint should be dismissed.

## STATEMENT

### A.    The Complaint's allegations.

The Complaint seeks forfeiture of two Claimed Accounts, described in Paragraph 3:

(a)     $37,564,565.25 in bank funds seized from Account Number XXXXXXXX9515 at Morgan Stanley, held in the name of Claimant Anicorn, LLC, on March 9, 2018 (the "Anicorn Claimed Account"); and

(b)      $21,113.21 in bank funds seized from Account Number XXXXXX9537 at Wells Fargo Bank, N.A., held in the name of Claimant Artemus Group, LLC, on July 2, 2018 (the "Artemus Claimed Account").[1]

Claimant Michel is an entertainer and businessman.  Complaint ¶ 7.  Claimants Anicorn and Artemus are Delaware limited liability companies, of which Mr. Michel is a member.  Id. ¶ 17. Each company was established in March 2017.  Id.

The Complaint alleges that the funds in the Claimed Accounts can be traced to a series of transfers of funds in the custody or control of a Malaysian businessman named Jho Low, who was under investigation for conspiring to violate the Foreign Corrupt Practices Act and conspiring to launder funds embezzled from 1Malaysia Development Berhad ("1MDB"), a Malaysian investment and development company.  Id. ¶ 9.  The Complaint does not allege, however, that funds that were ultimately deposited in the Claimed Accounts were the proceeds of specified

---

[1] The Complaint also seeks forfeiture of amounts held in two other bank accounts.  See Complaint ¶¶ 3.c, 3.d.  Because Claimants do not assert an interest in those funds, they are not pertinent here.

2

unlawful activity by Mr. Low, much less does the Complaint allege that the Claimants knew that the funds in the Claimed Accounts were unlawful proceeds.[2]

According to the Complaint, Mr. Michel was engaged by Mr. Low's brother to assist in a civil forfeiture investigation that stemmed from Mr. Low's legal difficulties.  *Id.* ¶ 11.  The Complaint alleges that Mr. Michel, along with others, including Department of Justice employee George Higginbotham, worked to obtain assistance for Mr. Low in responding to the investigation. *E.g.*, *id.* ¶¶ 11-15.

The Complaint alleges that accounts were opened for Anicorn and Artemus at City National Bank on March 30, 2017.  *Id.* ¶ 17.  It further alleges that wire transfers were made to Anicorn's account at City National Bank in May, August, and September 2017 and that there was a wire transfer to an Artemus account at City National Bank in August 2017.  *Id.* ¶¶ 24, 26, 31, 32, 36.  The Complaint alleges that each of these transfers were from a Hong Kong-based entity called Lucky Mark (HK) Trading Limited, "a corporate entity that exists in part to transfer JHO LOW's money."  *Id.* ¶ 24.

The Complaint alleges that, in September 2017, the day before the last of these deposits was made at City National Bank, Mr. Higginbotham made false statements to City National Bank in order to conceal the fact that funds transferred to Anicorn's account at City National Bank had originated with an entity affiliated with Mr. Low.  Complaint ¶¶ 42-43.  The Complaint does not allege that Mr. Higginbotham made any false statements to City National Bank related to the funds transferred to the Artemus account.  City National Bank allegedly ended its relationship with

---

[2] Presumably, the failure to make these allegations is not an oversight.  Rather, these allegations were not made because the Government cannot prove such allegations.  Mr. Michel, Anicorn, and Artemus are innocent owners of the funds at issue.

Anicorn and Artemus on September 29, 2017, and issued cashier's checks to Mr. Michel for the remaining balances of approximately $37 million. *Id.* ¶ 37.

Shortly thereafter, the Complaint alleges, the cashier checks issued by City National Bank were provided to Morgan Stanley to open investment management accounts in Anicorn's and Artemus's names. Complaint ¶ 44. The Anicorn Claimed Account that is named as a defendant in the Complaint presumably is the account Anicorn opened with the funds previously deposited at City National Bank. See Complaint ¶ 3.a (referred to in the Complaint as the "ANICORN ACCOUNT").

The Complaint alleges that shortly after the Morgan Stanley accounts were opened, and in connection with opening those accounts, Mr. Higginbotham and Mr. Michel made false statements to Morgan Stanley about the source and purpose of the funds, specifically, that "the funds were for media consulting purposes." *Id.* ¶ 45. In addition, the Complaint alleges that Mr. Higginbotham later falsely told Morgan Stanley that "the funds originated with Lucky Mark, LTD . . . who is an investor in a slate of projects the [sic] are currently under review and subject to further discussion" and that "the funds represent a good faith deposit contemplating future investments." *Id.*

The Complaint alleges that, in October 2017, a check for approximately $1.7 million in funds traceable to the August 2017 deposit received by Artemus at City National Bank was deposited into an Artemus-affiliated account at Morgan Stanley. Complaint ¶ 32. Approximately $1.25 million was then transferred from the Artemus-affiliated Morgan Stanley account to an Artemus account at Wells Fargo in November 2017. *Id.* The Artemus account at Wells Fargo is named as a defendant in the Complaint. See Complaint ¶ 3.b (referred to in the Complaint as the "ARTEMUS ACCOUNT").

According to the Complaint, the opening of bank accounts for Anicorn and Artemus at City National Bank, and the transfer of assets into these accounts and into the subsequent accounts opened in the name of Anicorn and Artemus, were part of a scheme to defraud American financial institutions by "funneling" money from Mr. Low into the United States.  Complaint ¶ 48.  The Complaint alleges that Messrs. Michel, Higginbotham, Low, and others worked to disguise the fact that the funds came from Mr. Low, because they believed that banks in the United States otherwise would not accept his money.  *Id.*  The Complaint further alleges that Mr. Higginbotham and Mr. Michel caused false statements to be made to City National Bank and Morgan Stanley in order to effectuate the alleged scheme.  *Id.*  There is no claim that false statements were made to Wells Fargo.

The Complaint asserts four claims for civil forfeiture, invoking various theories under 18 U.S.C. § 981(a)(1).  See Complaint ¶¶49-60.  As explained in more detail below, each of the four counts is ultimately grounded on allegations that the funds held in the Claimed Accounts constitute, or are derived from, proceeds traceable to the alleged bank fraud and false statement offenses designed to conceal Mr. Low as the ultimate source of the funds.  See pp. 8, 15-16, *infra.*[3]

---

[3] Count One relies on allegations of conduct that would ordinarily be charged as part of a "concealment" money laundering offense—efforts to "conceal" the "source" and "ownership" of the funds held in the Claimed Accounts.  Complaint ¶ 48.  But concealment money laundering is much more than a transaction designed to "conceal or disguise the nature, the location, the source, the ownership, or the control of" particular funds.  18 U.S.C. § 1956(a)(1)(B)(i); see also *id.* § 1956(a)(2)(B)(i) (transportation involving concealment).  It also requires the Government to allege that the transaction "in fact involve[d] the proceeds of specified unlawful activity" and that the defendant knew that the funds represented proceeds of unlawful activity.  *Id.* § 1956(a)(1); see also *id.* § 1956(a)(2)(B).  The Complaint, however, does not allege that funds in the Claimed Accounts can be traced to specified unlawful activity by Mr. Low.  Nor does the Complaint allege that Mr. Higginbotham knew that these funds were derived from unlawful activity by Mr. Low. Finally, and most significantly, it does not allege that Mr. Michel, who is an innocent owner of the funds, knew this to be the case.  Rather, the Government seeks to circumvent these requirements by claiming that concealment, standing alone, constitutes bank fraud or false statements to a financial institution.  As set forth below, this effort fails as a matter of law.

**B.     Procedural background.**

The Government filed its Complaint on November 30, 2018.  On January 7, 2019, each Claimant filed a timely verified claim asserting interests in one of more of the Claimed Accounts. Anicorn's verified claim asserted a claim to the Anicorn Claimed Account at Morgan Stanley as the lawful owner that has a possessory interest in that property.  Dkt. No. 12, at 2.  Artemus's verified claim made the same claim with respect to the Artemus Claimed Account at Wells Fargo. Dkt. No. 13, at 2.  Mr. Michel's verified claim asserted claims as to both accounts, relying on his status as a member of both Anicorn and Artemus with authority to dispose of their property.  Dkt. No. 14, at 2.

## LEGAL STANDARD

Under Supplemental Rule G, the Government faces "a heightened burden for pleading" in civil forfeiture cases beyond that applicable in actions governed solely by the Federal Rules of Civil Procedure.  *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008).  In particular, the Government's complaint must at least "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. R. Civ. P. Supp. R. G(2)(f).  Accordingly, the Complaint must "allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation," and it must also "allege enough facts such that the court may infer that the property is subject to forfeiture."  *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).  The "heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations."  *Id.*

Moreover, because the Federal Rules of Civil Procedure apply to forfeiture action as long as they are not "inconsistent with" the Supplemental Rules, Fed. R. Civ. P. Supp. R. A(2), the

Government must also satisfy the ordinary pleading standards that would apply in any civil litigation. *Gulfstream Jet*, 941 F. Supp. 2d at 13 ("Although the Supplemental Rules govern, the normal set of rules may help to clarify any ambiguity.")[4]

Thus, as is typically the case for any type of civil pleading, the Government must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Government must also satisfy Rule 9(b)'s requirement that pleadings "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## ARGUMENT

The Court should dismiss the Complaint for the forfeiture of the Claimed Accounts for failure to state a claim upon which relief can be granted. As set forth below, Count One should be dismissed because the Government has failed to plead facts that state the offenses of the bank fraud and false statements to a financial institution, the offenses upon which Count One is premised. Count One also fails because the Government has not pleaded facts to support the allegation that the funds in the Claimed Accounts are proceeds of any such offense. The Complaint's remaining claims should also be dismissed because, like Count One, each is premised on allegations that the Claimed Accounts constitute proceeds of a bank fraud or false statements to a financial institution offense.

---

[4] See also Fed. R. Civ. P. Supp. R. G(1) ("This rule governs a forfeiture action in rem arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply."); Fed. R. Civ. P. Supp. R. G Advisory Committee Note ("The Civil Rules continue to provide the procedural framework within which Rule G and the other Supplemental Rules operate.").

I.   **Count One should be dismissed because the Complaint does not adequately allege that the funds in the Claimed Accounts are proceeds of specified unlawful activity.**

Count One alleges that the Claimed Accounts are subject to forfeiture under 18 U.S.C. § 981 because they are property "which constitutes or is derived from proceeds traceable to . . . 'specified unlawful activity' . . . or a conspiracy to commit such offense."   18 U.S.C. § 981(a)(1)(C); see Complaint ¶ 51.  In particular, Count One is predicated on allegations that the Claimed Accounts constitute, or are derived from, proceeds traceable to bank fraud, in violation of 18 U.S.C. § 1344, making false statements to a financial institution, in violation of 18 U.S.C. § 1014, and a conspiracy to commit such offenses, in violation of 18 U.S.C. § 371.  Complaint ¶ 50.

Count One fails to meet the Government's heightened pleading burden to allege sufficiently detailed facts to state of any of these offenses.  Further, in any event, Count One does not plausibly allege that the funds in the Claimed Accounts are proceeds of any of the alleged offenses.

A.   **The Complaint does not adequately allege the commission of any specified unlawful activity or the existence of a conspiracy.**

1.   **Count One fails to state the offense of bank fraud.**

The Government's theory of bank fraud is that transfers of funds into the Claimed Accounts were part of a scheme to defraud financial institutions by "funneling" money from Jho Low into the United States.  Complaint ¶ 48.  According to the Complaint, the scheme was implemented by taking steps to conceal the origin of the funds and Mr. Low's connection to them.  *Id.*

To establish liability under Section 1344, however, the Government must show not merely a scheme "to deceive the bank," but also a scheme to "deprive it of something of value."  *Shaw v. United States*, 137 S. Ct. 462, 469 (2016).  That second element is entirely absent from the Complaint's allegations.  On the contrary, Count One alleges that banks were deceived in order to

8

induce them to *receive* funds that were linked to Mr. Low.  That cannot plausibly be described as a scheme to "deprive [a bank] of something of value."  *Id.*

To be sure, Section 1344 does not require that the defendant "intend to cause the bank financial harm."  *Shaw*, 137 S. Ct. at 466.  Thus, it is enough that a bank be "'deprived of its right' to use of the property" through a fraudulent scheme, such as false statements in a loan application that induce a bank to make a loan, "even if it ultimately did not suffer unreimbursed loss."  *Id.* at 467 (quoting *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987)).  But there still must be deprivation—that is, the bank must be "induced to part with" use of its property by means of a fraudulent scheme.  *Id.* (quoting *United States v. Rowe*, 56 F.2d 747, 749 (2d Cir. 1932)).

Because the Complaint fails to allege any scheme to deprive a bank of the right to the use of the property, merely false statements to induce the bank to receive or retain property, the allegations do not state the offense of bank fraud.  See *United States v. Lewis*, 67 F.3d 225, 233 (9th Cir. 1995) (noting, in a case involving alleged fraud on a bank prosecuted as wire fraud, that "the right to make an informed business decision is not the kind of intangible right protected under the wire fraud statute").  Therefore, bank fraud cannot be the specified unlawful activity needed to support Count One's claim for forfeiture.

### 2.    Count One fails to state the offense of making false statements to a financial institution.

As is pertinent here, to establish the offense of making false statements to a financial institution, the Government must "demonstrate (1) that the defendant made a 'false statement or report' . . . and (2) that he did so 'for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, . . . commitment, or loan.'"  *Williams v. United States*, 458 U.S. 279, 284 (1982) (quoting 18 U.S.C. § 1014) (second and third

alterations in original).  Here, the Complaint identifies two sets of allegedly false statements in connection with the Claimed Accounts, but neither one establishes a violation of Section 1014.

### i. The allegations of false statements are insufficient under the relevant heightened pleading standards.

The Complaint alleges that Mr. Michel and Mr. Higginbotham made false statements to representatives of City National Bank and Morgan Stanley in connection the existing Anicorn accounts at City National Bank and in connection with the opening of the Anicorn and Artemus accounts at Morgan Stanley.  The Anicorn-affiliated account at Morgan Stanley is the Anicorn Claimed Account.  The Artemus-affiliated account at Morgan Stanley was, according to the Complaint, later used to fund the Artemus Claimed Account at Wells Fargo.

With respect to City National Bank, the Complaint alleges that while Mr. Higginbotham informed the bank that Anicorn had been retained to help identify counsel and other professionals to help resolve a litigation matter, he did not "mention" 1MDB or the intent to use the funds to assist Mr. Low.  Nor did he "mention" Jho Low's connection to the funds or to Lucky Mark.  *Id.*at ¶¶ 42-43.  The Complaint characterizes these statements as "false," yet, on their face, they are not allegations of affirmative false statements, but rather, allegations of omissions.

The Complaint alleges that Mr. Higginbotham's statements were made in response to requests for additional documents and information; it does not allege they were made in response to any particular inquiry that would have called for the information that Mr. Higginbotham allegedly failed to "mention."  Accordingly, the Complaint fails, under the applicable heightened pleading standard, adequately to allege that the omissions were material or that they were made with the intent to deceive. See *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (materiality is an element of a false statement); *United States v. Naegele*, 341 B.R. 349, 355 (D.D.C. 2006)  (a

question is fundamentally ambiguous, and therefore not a false statement as a matter of law, "when it is entirely unreasonable to expect that the defendant understood the question posed to him")[5]

With respect to Morgan Stanley, the Complaint alleges that Mr. Michel represented that the funds being deposited "were for media consulting purposes" and that Mr. Higginbotham represented that the funds originated from a potential investor in contemplation of future investments. *Id.* ¶ 45. The Complaint alleges that these representations were false because, in fact, the funds "were not intended to be used principally for media consulting purposes or for investments" but rather were "principally intended to be disbursed to other third parties in the United States to advance JHO LOW's interests in having the 1MDB forfeiture litigation closed." *Id.* Again, the Complaint fails to allege to what, if any, specific question the information was given in response.

Further, the Complaint does not allege that Mr. Michel and Mr. Higginbotham stated that the funds were intended to be used *principally* for media consulting or for investments; rather, the Complaint alleges only that they stated that the funds were to be used for those purposes. Complaint ¶ 45. Accordingly, the allegation in the Complaint that, in fact, the funds were not *principally* for this purpose is of no moment.

Even if the Complaint alleged that the statements that *were* allegedly made *implied* that media consulting was the *principal* purpose--as opposed to a purpose among others (such as the purpose discussed with City National Bank, retaining professionals to assist with litigation)—for which the funds would be used, the Complaint would fail to allege falsity under the heightened

---

[5]  The Complaint also alleges that Mr. Higginbotham provided City National Bank information that related not to Lucky Mark (HK) Trading Limited, but rather to Lucky Mark International (HK) Limited, a different entity in Hong Kong with a similar name.  It does not allege, however, that this was done intentionally, with the purpose of deceiving.

pleading standard. Since the Complaint fails to allege, much less allege with any particularity, the question(s) to which the statements were allegedly made in response, the Complaint fails adequately to allege that the statements were made in response to a question that was not fundamentally ambiguous. See *Naegele*, 341 B.R. at 355.[6]

### ii. The Complaint fails altogether to allege that the purported falsities made to City National Bank and to Morgan Stanley were made to influence a lending decision.

Finally, and more significantly, even if the Complaint adequately alleges their falsity, the Complaint fails to allege that the statements to City National Bank and Morgan Stanley were made with the purpose of influencing the bank with respect to any "application, advance, . . . commitment, loan," or any other enumerated decision. 18 U.S.C. § 1014. Rather, the Complaint alleges only that these statements were made in response to requests for information, without any allegation that they were intended to influence a decision by the banks. Complaint ¶ 45. Without an allegation of the wrongful purpose that is proscribed by Section 1014, influencing a business decision of a financial institution, the alleged falsities are insufficient to support the claim for forfeiture.

---

[6] At various points, the Complaint alleges that payments transferred to Anicorn and Artemus were used to fund "lobbying" efforts, *e.g.*, Complaint ¶¶ 7, 33, and the Complaint relates one instance in which an individual who had allegedly received such funds was involved in the preparation of talking points for a Malaysian government in anticipation of a meeting with a United States official, *id.* ¶ 30. Since lobbying efforts and media strategies are intertwined, these actions can plausibly be described as part of "media consulting" services. A fair reading of the Complaint, therefore, is that the alleged statements were literally true. See, *e.g.*, *United States v. Attick*, 649 F.2d 61, 63 (1st Cir. 1981) ("[Defendant] correctly points out that one cannot be convicted under [Section 1014] if the statement claimed to be false is, in fact, literally true."); *United States v. Safavian*, 528 F.3d 957, 967 (D.C. Cir. 2008) ("literal truth" provides a "complete defense" in a prosecution for making false statements under 18 U.S.C. § 1001).

Even under the most generous reading of the Complaint, it does not allege that any of the alleged false statements were made for the purpose of influencing a decision enumerated by the statute.  The statutorily enumerated decisions all pertain to lending, *i.e.*, decisions of the financial institution to part with property.  A decision to accept or retain deposits does not fall within the ambit of the statute.  The alleged statements therefore cannot establish the commission of an offense under Section 1014.[7]

### 3. The Complaint fails to state the offense of conspiracy to commit bank fraud or to make false statements to a financial institution.

Count One also alleges that the Claimed Accounts are subject to forfeiture because they constitute, or are derived from, proceeds traceable to a conspiracy to commit bank fraud and to make false statements to financial institutions, in violation of 18 U.S.C. § 371.  Complaint ¶ 50. The statutory definition of specified unlawful activity, however, does not include Section 371 conspiracy.  See 18 U.S.C. § 1956(c)(7).  The portion of Count One that relies on an allegation of conspiracy to commit bank fraud or conspiracy to make false statements to a financial institution as specified unlawful activity should accordingly be dismissed.

Further, the allegation of conspiracy is entirely threadbare:  The Complaint does not specify the participants in this alleged conspiracy or the timing of its formation, and it does not otherwise

---

[7] Properly construed, Section 1014 reaches only false statements made in connection with "lending activities by financial institutions."  *United States v. Devoll*, 39 F.3d 575, 579 (5th Cir. 1994); see also *United States v. Krown*, 675 F.2d 46, 51 (2d Cir. 1982).  Although some courts outside of the D.C. Circuit have read the statute more broadly, see, *e.g.*, *United States v. Krilich*, 159 F.3d 1020, 1027-29 (7th Cir. 1998); *United States v. Boren*, 278 F.3d 911, 915 (9th Cir. 2002), those decisions are inconsistent with the Supreme Court's recognition that Section 1014 criminalizes "making false statements or reports *in connection with loans or other similar transactions*."  *Williams*, 458 U.S. at 289-90 (quoting H.R. Rep. No. 91-1556 at 35 (1970) (emphasis added).  The Complaint fails to allege that Mr. Higginbotham and Mr. Michel's alleged statements to City National Bank and Morgan Stanley were made with the purpose of influencing *any* lending *or similar decision* by the financial institution.

describe the nature of the alleged conspiracy.   Thus, as to the conspiracy allegations, the Government has failed to satisfy its heightened particularity pleading obligation and has not met its burden to "allege enough facts so that the claimant may understand the theory of forfeiture." *Gulfstream Jet*, 941 F. Supp. 2d at 14; see also, *e.g., United States v. $39,000 In Canadian Currency*, 801 F.2d 1210, 1220 (10th Cir. 1986) (upholding dismissal of forfeiture count where "claims of unidentified parties and unspecified conduct" failed to "give a claimant a reasonable starting point from which to initiate a meaningful investigation"); *Whittle v. Proctor & Gamble*, No. 1:06-CV-744, 2007 WL 4224360, at *9 (S.D. Ohio Nov. 27, 2007) (dismissing claim for civil conspiracy where "[t]he complaint fail[ed] to allege with any degree of specificity the identity of the alleged conspirators and the purpose of the alleged conspiracy").

As explained above, moreover, the conduct alleged in the Complaint to constitute bank fraud and making false statements to a financial institution is insufficient to state either of those offenses.  See pp. 8-13, *supra*.  Thus, any allegation of an agreement to undertake that conduct would be insufficient to establish a conspiracy offense.  Conspiracy requires, among other things, "an agreement between two or more persons *to commit an offense*."   *United States v. Wynn*, 61 F.3d 921, 929 (D.C. Cir. 1995) (emphasis added).  Thus, the Complaint does not plausibly allege any conspiracy to commit bank fraud or to make false statements.

## B.   The Claimed Accounts are not alleged to be proceeds of the alleged offense conduct.

Even if the Complaint plausibly alleged the commission of bank fraud and false statements to a financial institution, Count One would necessarily need to be dismissed for the independent reason that the Complaint fails to allege that the Claimed Accounts are proceeds traceable to any such offenses.  As is pertinent here, Section 981 defines "proceeds" to mean "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to

14

forfeiture, and any property traceable thereto."  18 U.S.C. § 981(a)(2).  The statutory definition cannot plausibly be stretched to encompass the funds held in the Claimed Accounts because, even assuming that the Complaint adequately alleges bank fraud and false statements offenses (or a related conspiracy offense), the funds were not "obtained . . . as the result of the commission" of those offenses.  *Id.*

The Complaint's bank fraud allegations are premised on an alleged scheme to "funnel[]" money from Mr. Low into the United States.  Complaint ¶ 48.  But even if that conduct could be described as a scheme to commit bank fraud, it cannot possibly be understood as a scheme that generated any criminal proceeds.  There is no allegation that the funds held in the Claimed Accounts were funds fraudulently obtained from the relevant banks.  The funds are not proceeds resulting from any false statements made to City National Bank or Morgan Stanley.

To state the obvious, making these allegedly false statements could not have resulted in Anicorn and Artemus "obtain[ing]" funds they already possessed.  18 U.S.C. § 981(a)(2)(A).  Count One should accordingly be dismissed.[8]

## II.    The Complaint's failure to allege that the Claimed Accounts are proceeds of specified unlawful activity requires dismissal of the remaining counts.

The Complaint's failure to adequately allege that the Claimed Accounts are traceable to the commission of specified unlawful activity also dooms Counts Two through Four of the Complaint because, as with Count One, those claims are ultimately grounded on the same premise.  Counts Two through Four allege money laundering offenses as the basis for forfeiture of the

---

[8]  As noted above, the Complaint could allege that the funds are proceeds of specified unlawful activity by Mr. Low and further allege that the Claimants knew these were proceeds from Mr. Low's unlawful conduct when they engaged in financial transactions involving those funds. But the Complaint does not do so.  Rather, it rests entirely on the implausible factual contention that the funds are proceeds of Mr. Higginbotham's and Mr. Michel's alleged false statements to the banks.

Claimed Accounts, but they do not contain any allegation that the funds allegedly transferred from Mr. Low were the proceeds of specified unlawful activity, or that anyone believed them to be unlawful proceeds.  On the contrary, the only predicate instances of specified unlawful activity alleged in Counts Two through Four are the very same allegations of bank fraud and false statements that form the basis of Count One—allegations that Mr. Michel and Mr. Higginbotham defrauded the banks by making false statements to induce them to accept funds originating from Mr. Low.

As with Count One, Count Two premises its allegations of specified unlawful activity on bank fraud, conspiracy to commit bank fraud, and false statements to a financial institution, based on the alleged false statements made by Mr. Higginbotham and Mr. Michel to the financial institutions.  Complaint ¶ 53.  Count Three also invokes bank fraud, conspiracy to commit bank fraud, and false statements to a financial institution as the underlying instances of specified unlawful activity.  Complaint ¶ 56.  Finally, Count Four invokes bank fraud and false statements to a financial institution as the underlying instances of specified unlawful activity.  See Complaint ¶ 59.  Since Count Two, Three, and Four all rest on the premise that the Claimed Accounts are proceeds of the same specified unlawful activity relied upon in Count One, each should be dismissed for the same reasons.[9]

---

[9] As with Count One, Counts Two and Three incorrectly allege a Section 371 conspiracy to commit bank fraud as a predicate offense of specified unlawful activity.  Complaint ¶¶ 53, 56.  Because Section 371 conspiracy does not constitute specified unlawful activity, 18 U.S.C. § 1956(c)(7), the portions of Counts Two and Three premised on that offense should also be dismissed.  See p. 13, *supra*.  Count Four relies solely on the alleged substantive bank fraud and false statement offense as the specified unlawful activity; it does not even attempt to premise liability on a Section 371 conspiracy.

## **CONCLUSION**

For the reasons given above, the Complaint fails to allege a basis for forfeiture as to the Claimed Accounts.  It has not adequately alleged bank fraud, false statements, and conspiracy offenses.   Nor has does it adequately allege that the Claimed Accounts are proceeds of the offense conduct alleged.  The Complaint should accordingly be dismissed as to the Claimed Accounts.

Claimants request an oral hearing on this motion.


Dated: January 28, 2019
      Washington, D.C.

Respectfully submitted.

s/ Barry J. Pollack
Barry J. Pollack (D.C. Bar #434513)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
  UNTEREINER & SAUBER LLP
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone:   (202) 775-4500
Facsimile:   (202) 775-4510
Email:   bpollack@robbinsrussell.com

*Counsel for Claimants Anicorn, LLC, Artemus Group, LLC, and Prakazrel Michel*

17