**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    Plaintiff,<br>    v.<br>$37,564,565.25 in ACCOUNT NUMBER XXXXXXXX9515 AT MORGAN STANLEY, IN THE NAME OF ANICORN, LLC;<br>$21,113.21 in ACCOUNT NUMBER XXXXXX9537 AT WELLS FARGO, N.A., IN THE NAME OF ARTEMUS GROUP, LLC;<br>$25,002,568.63 in ACCOUNT NUMBER XXXXXX1078 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C.; and<br>$11,314,205.00 in ACCOUNT NUMBER XXXXXX9974 AT CITIBANK, IN THE NAME OF HIGGINBOTHAM LAW P.C.;<br>    Defendants *in rem*. | Civil Action No. 18-cv-02795 (CKK) |

**MEMORANDUM OPINION**
(October 17, 2019)

The United States of America brings this civil forfeiture action against the named defendants *in rem*—funds held at Morgan Stanley, Wells Fargo, and Citibank—and asserts that the funds are subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) as property constituting, derived from, or traceable to proceeds of bank fraud, false statements, and conspiracy.

The Court's prior Order for Default Judgment declared the defendant funds held at Citibank forfeited to the United States. ECF No. 23. Now before the Court is Claimants' Motion to Dismiss Government's Verified Complaint as to the remaining defendant funds of $37,564,565.25 held at Morgan Stanley in the name of Anicorn, LLC and $21,113.21 held at Wells Fargo in the name of Artemus Group, LLC. ECF No. 15. Anicorn, LLC, Artemus Group, LLC, and Prakazrel Michel

1

(collectively, "Claimants") argue that "[b]ecause the Complaint's factual allegations do not state either the offense of bank fraud or false statements to a financial institution, each forfeiture count should be dismissed for failure to state a claim for which relief can be granted." Mot., ECF No. 15, 1. Upon consideration of the pleadings,[1] relevant legal authority, and the record as it currently exists, the Court DENIES WITHOUT PREJUDICE Claimants' Motion to Dismiss. The Government's Complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The Government has made sufficient allegations, which taken as true, state the triggering offenses of bank fraud, false statement, and conspiracy, and allow the Court to infer that the remaining defendant funds are forfeitable as property constituting, derived from, or traceable to proceeds of those offenses.

## I. BACKGROUND

For purposes of the Motion before the Court, the Court accepts as true the well-pled allegations in the Government's Complaint. The Court does "not accept as true, however, any legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

The Complaint's overarching narrative is that a Malaysian businessman named Jho Low, the target of an ongoing Department of Justice investigation and related civil forfeiture

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Verified Compl. for Forfeiture *In Rem*, ECF No. 1 ("Compl."); Claimants' Mot. to Dismiss Verified Compl. for Forfeiture *In Rem*, ECF. No. 15 ("Mot."); Pl.'s Opp'n to Claimants' Mot. to Dismiss, ECF No. 18 ("Opp'n"); Claimants' Reply to Opp'n to Claimants' Mot. to Dismiss, ECF No. 21 ("Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

proceedings, funneled millions of dollars into the United States with help from his associates, Prakazrel Michel and George Higginbotham. The Complaint alleges that the conspirators concealed the money's connection to Jho Low and his legal troubles so they could open several accounts at American financial institutions that served as receptacles for funds transferred from Jho Low in Asia. Compl., ECF No. 1, ¶ 48. The Complaint claims that, after the transfers from Asia were executed, money was frequently withdrawn from the American bank accounts to be disbursed among various individuals and entities engaged in a lobbying campaign that would influence the DOJ's investigation of Jho Low. *Id.* at ¶ 7. In accordance with federal seizure warrants issued by the U.S. District Court for the District of Columbia, accounts at Citibank, Morgan Stanley, and Wells Fargo were seized in 2018. *Id.* at ¶ 3. This civil action seeks forfeiture of the seized accounts. Because the Court has already granted default judgment against the assets held at one of the banks, Citibank, the Court here recounts only the factual allegations that are relevant to the instant Motion to Dismiss concerning the remaining assets at Morgan Stanley and Wells Fargo.

The Complaint states that on March 20, 2017, Michel's financial advisor established two new companies in Delaware: Anicorn, LLC ("Anicorn") and Artemus Group, LLC ("Artemus"). *Id.* at ¶ 17. On March 30, 2017, bank accounts for these companies were opened at City National Bank in California. *Id*. On May 8, 2017, the Anicorn account received a $2.8 million wire transfer from an entity in Hong Kong called Lucky Mark (HK) Trading Limited ("Lucky Mark"). *Id.* at ¶ 24. The Government asserts that Jho Low uses the Lucky Mark entity to shift his money. *Id.* Between May 17 and August 9, 2017, the Anicorn account received three additional transfers from Lucky Mark, totaling approximately $18.5 million. *Id.* at ¶¶ 26, 28, 31. On August 24, 2017, the Artemus account received a $10 million transfer from Lucky Mark. *Id* at ¶ 32. On September 19,

2017, City National Bank requested documents and information related to the Lucky Mark transfers to Anicorn. *Id.* at ¶ 42. Higginbotham responded with a letter that characterized the transfers as coming from a legitimate company and omitted all information that might connect the money to Jho Low. *Id.* On September 20, 2017, the Anicorn account received a $30 million transfer from Lucky Mark. *Id.* at ¶ 36. On or about September 29, 2017, City National Bank ended its relationship with Anicorn and Artemus and issued cashier's checks to Michel for the remaining balance in each account. *Id.* at ¶ 44. These cashier's checks were then used to open new accounts for Anicorn and Artemus at Morgan Stanley. *Id.* The Complaint alleges that:

> "Shortly after the Anicorn and Artemus funds were moved to Morgan Stanley, and in connection with the opening of accounts in the names of Anicorn and Artemus at Morgan Stanley, HIGGINBOTHAM met with a Morgan Stanley employee in the District of Columbia to discuss the opening of these accounts. HIGGINBOTHAM and MICHEL also participated in a conference call with a Morgan Stanley representative."

*Id.* at ¶ 45. According to the Complaint, Michel and Higginbotham told Morgan Stanley that the money came from a legitimate business; they did not mention the money's connection to Jho Low. *Id.* On November 29, 2017, approximately $1.25 million was transferred from the Artemus account at Morgan Stanley to an Artemus account at Wells Fargo. *Id.* at ¶ 32. At the time of seizure in 2018, the Anicorn account at Morgan Stanley was worth approximately $37.6 million and the Artemus account at Wells Fargo was worth approximately $21 thousand. The Government seeks forfeiture of these assets.

4

## II. LEGAL STANDARD

Claimants argue that "[b]ecause the Complaint's factual allegations do not state either the offense of bank fraud or false statements to a financial institution, each forfeiture count should be dismissed for failure to state a claim for which relief can be granted." Mot., ECF. No. 1, 1. Accordingly, this Court must determine whether or not the Complaint sufficiently states the claimed offenses. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition to the basic plausibility requirements of *Twombly* and *Iqbal*, Supplemental Rule G of the Federal Rules of Civil Procedure imposes a heightened pleading standard in civil forfeiture cases such as this. The Government's Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). A complaint must "allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013). A complaint must also "allege enough facts such that the court may infer that the property is subject to forfeiture." *Id.*

## III. DISCUSSION

In its Verified Complaint for Forfeiture *In Rem*, the Government argues that the Anicorn account at Morgan Stanley and the Artemus account at Wells Fargo are subject to forfeiture as property constituting, derived from, or traceable to proceeds of unlawful activity. The Government advances four independent Counts.

Count One asserts that the Anicorn and Artemus accounts are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). Pursuant to § 981(a)(1)(C), forfeiture is permitted for "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" one of its enumerated offenses. The enumerated offenses include: bank fraud as defined in 18 U.S.C. § 1344, false statements as defined in 18 U.S.C. § 1014, and a conspiracy to commit any of the enumerated offenses. The Government alleges that each of these enumerated offenses occurred and that the accounts qualify as proceeds of these offenses.

Counts Two, Three, and Four assert that the Anicorn and Artemus accounts are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). Pursuant to § 981(a)(1)(A), forfeiture is permitted for "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960." Count Two alleges a violation of § 1957. Section 1957 proscribes knowingly engaging in or attempting to engage in "a monetary transaction in criminally derived property." "Criminally derived property" is defined as "property constituting, or derived from, proceeds obtained from a criminal offense." The Government alleges that Claimants and other actors violated § 1957 when they engaged in a monetary transaction in property criminally derived from § 1344 bank fraud, § 1014 false statements, and conspiracy. Count Three alleges a violation of § 1956(a)(1)(B)(i). This section proscribes knowingly effecting or conspiring to effect "a financial transaction" that is designed "to conceal or disguise the nature, the location, the source,

the ownership, or the control of the proceeds of specified unlawful activity." "Specified unlawful activity" is defined by § 1956(c)(7) as including § 1344 bank fraud, § 1014 false statements. The Government alleges that Claimants and other actors entered into a conspiracy to effect—and did effect—such a transaction. Finally, Count Four alleges a violation of § 1956(a)(2)(B)(i). This section criminalizes any scheme that "transports, transmits, or transfers . . . funds . . . to a place in the United States from or through a place outside the United states" when such scheme is designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Again, "specified unlawful activity" is defined as including § 1344 bank fraud, § 1014 false statements. The Government alleges that Claimants and other actors entered into a conspiracy to accomplish—and did accomplish—such a scheme.

Accordingly, the Government's four counts of forfeiture rest on allegations of 18 U.S.C. § 1344 bank fraud, 18 U.S.C. § 1014 false statements, and conspiracy to commit both. Claimants have moved to dismiss all four counts, arguing that the Complaint does not adequately allege the commission of any unlawful activity or the existence of a conspiracy. Claimants also argue that the alleged offenses did not result in proceeds subject to forfeiture.

Drawing all reasonable inferences in favor of the Government, the Court concludes that the Complaint adequately alleges the commission of bank fraud, false statements, and conspiracy. Assuming the Complaint's factual allegations are true, the Court also concludes that the named accounts may qualify as proceeds of those offenses. The reasoning behind the Court's conclusions is set forth below. The Motion to Dismiss is DENIED WITHOUT PREJUDICE.

### A. Bank Fraud

Federal bank fraud is defined by 18 U.S.C. § 1344:

Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

In *BCCI Holdings* (*Lux.*), *Societe Anonyme v. Khalil*, a United States District Court for the District of Columbia held that exposing a bank to "risk of loss" establishes liability under § 1344(1) for defrauding a financial institution. The court explained:

"Finally, Khalil also conspired to, and did, commit bank fraud in violation of 18 U.S.C. § 1344. That section prohibits engaging in or attempting to engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property with intent to victimize the institution by exposing it to actual or potential loss . . . This scheme was undertaken with specific intent to defraud and exposed First American to risk of loss."

*BCCI Holdings* (*Lux.*), *Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14, 55 (D.D.C. 1999). On appeal, the D.C. Circuit reversed the District Court's decision regarding an unrelated issue but affirmed on all other points, including the District Court's decision that fraudulently exposing a bank to risk of loss triggers liability under § 1344. *See BCCI Holdings* (*Lux.*), *Societe Anonyme v. Khalil*, 214 F.3d 168, 170 (D.C. Cir. 2000). Other Circuits have similarly held that exposure to risk of loss can qualify as bank fraud under § 1344. *See*, *e.g.*, *United States v. Williams*, 865 F.3d 1302, 1316 (10th

Cir. 2017) ("[T]he Government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud.") (citation omitted); *United States v. Brandon*, 298 F.3d 307, 312 (4th Cir. 2002) ("[I]t is sufficient for the government to show that a financial institution [was] exposed to an actual or potential risk of loss.") (citation omitted).

Here, the Government argues that the alleged conspirators concealed the origin of incoming transfers in order to induce the banks to accept deposits connected to Jho Low, a character whose legal troubles might subject the banks to related civil liability, sanctions, fines, or penalties. According to the Complaint, "MICHEL, HIGGINBOTHAM, JHO LOW, and others disguised the fact that the funds came from JHO LOW because they believed no U.S. bank would accept JHO LOW's money in light of the publicly-filed civil forfeiture actions in the Central District of California and the announced pending criminal investigation." Compl., ECF. No. 1, ¶ 48. "HIGGINBOTHAM did not mention to City National Bank the 1MDB civil forfeiture proceedings discussed above, or MICHEL's intent to use the funds in these accounts to assist JHO LOW." *Id.* at ¶ 42. "The purpose of the loan agreement was to conceal JHO LOW's involvement in the transaction and provide a cover story in the event banks or other regulators made inquiries about the source and purpose of the funds." *Id.* at ¶ 36. In its Opposition, the Government explains:

> [I]nducing the banks to accept Low's money exposed the banks to a *risk* of losing "something of value" in the form of civil liability, Treasury Department Anti-Money Laundering sanctions, or other fines or penalties. After all, Low had already been accused of embezzlement and money laundering in several DOJ forfeiture Complaints, and was under active DOJ investigation. Thus, any bank that accepted his money was put at significant legal risk.

Opp'n, ECF No. 18, 4.

9

For purposes of this Motion to Dismiss, the Court finds that the risk of loss from civil liability, sanctions, fines, or penalties could have dissuaded the banks from accepting the money if they had known of its connection to Jho Low. Accordingly, the government has sufficiently alleged that bank fraud occurred because the Claimants exposed the banks to a risk of loss by inducing the banks to accept deposits into the Anicorn and Artemus accounts without knowledge of the funds' true origins. The Government's Complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial" when it attempts to prove bank fraud. Fed. R. Civ. P. Supp. R. G(2)(f).

To be subject to forfeiture under the statutes cited by the Government, 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), the named funds in this *in rem* action must be property constituting, derived from, or traceable to "proceeds" of unlawful activity. The Government identifies bank fraud as such an activity. "Proceeds" are defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A). Claimants argue that even if an offense occurred, the named funds cannot possibly be "proceeds" of that offense because the money was not obtained "as the result" of the acts that are alleged to be offenses. *See* Mot., ECF No. 15, 14. For purposes of this Motion to Dismiss, the Court disagrees.

The named funds may be "proceeds" in two ways. First, as the Government argues, the money (before it was deposited) may be an entirely separate piece of property from the positive-balance bank accounts established after the deposits. *See* Opp'n, ECF No. 18, 16. Under this theory, the pre-deposit money was essentially *traded to obtain a different, distinct piece of property*—the post-deposit bank accounts. That trade was allegedly induced by fraud.

Accordingly, the bank accounts may qualify as "property . . . obtained . . . as the result of the commission of the offense giving rise to forfeiture." 18 U.S.C. § 981(a)(2)(A).

Second, even if the pre-deposit money and the post-deposit funds are the *same* piece of property, the post-deposit funds may still be "proceeds" because the alleged fraud may have caused the banks to accept the money and thereby transfer ownership from Lucky Mark to Anicorn and Artemus. In other words, Anicorn and Artemus may have "obtained" the property as the result of fraud which permitted Anicorn and Artemus to open new accounts and receive deposits. Had the American bank accounts been owned by the same business entity from which the funds were transferred, no new entity would have "obtained" the money. However, because the deposits shifted ownership of the money to new entities, those entities can be said to have "obtained" it from Lucky Mark. Accordingly, the money may qualify as "proceeds."

Accordingly, the Complaint "allege[s] enough facts such that the court may infer that the property is subject to forfeiture" under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) as proceeds of bank fraud. *See United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).

### B. False Statements

As an additional ground for forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), the Complaint alleges that Michel, Higginbotham, and others made false statements to the banks regarding the origin of the money deposited in the Anicorn and Artemus accounts. The Complaint argues that the funds in the accounts are proceeds of those false statements. The parties disagree about whether or not the statements were made to influence the banks' decisions about one of § 1014's enumerated categories. Claimants argue "[t]he statutorily enumerated decisions all pertain to lending, *i.e.*, decisions of the financial institution to part with property. A decision to

accept or retain deposits does not fall within the ambit of the statute. The alleged statements therefore cannot establish the commission of an offense." Mot., ECF No. 15, 13. The parties provide no binding authority regarding whether or not § 1014 imposes liability for statements made to influence a bank's decision about something other than lending. Two Circuits have limited § 1014 liability to lending-related statements. *See United States v. Krown*, 675 F.2d 46, 51 (2nd Cir. 1982); *United States v. Devoll*, 39 F.3d 575, 579 (5th Cir. 1994). Most Circuits have extended liability beyond a strict lending context. *See*, *e.g.*, *United States v. Agne*, 214 F.3d 47, 54 (1st Cir. 2000); *United States v. Pinto*, 646 F.2d 833, 838 (3rd Cir. 1981); *United States v. Yoo*, 833 F.2d 488, 490 (3rd Cir. 1987); *United States v. Bonnette*, 781 F.2d 357, 365 (4th Cir. 1986); *United States v. Tucker*, 773 F.2d 136, 139 (7th Cir. 1985); *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998); *United States v. Boren*, 278 F.3d 911, 915 (9th Cir. 2002); *United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir. 1978); *United States v. Wade*, 266 F.3d 574, 579-81 (10th Cir. 2001). Persuasive appellate authority favors the Government's position that § 1014 liability extends beyond lending. Claimants contend that the Circuit majority is in conflict with the Supreme Court's decision in *Williams*, but the language there is broad enough to allow for liability in contexts beyond lending. For example, *Williams* recites that § 1014 applies to statements made in connection with "applications, loans, *and the like*." *Williams v. United States*, 458 U.S. 279, 289 (1982) (quoting S. Rep. No. 1078, 88th Cong., 2d Sess., 1 (1964)) (emphasis added).

Moreover, the Government argues that even if § 1014 is limited to lending, the statute *still* captures the alleged statements because "when a bank accepts a deposit, the bank is essentially accepting a loan from the depositor. Thus, the false statements in this case were designed to affect the financial institutions' decisions on a 'loan'—namely, a loan from Low to the institutions." Opp'n, ECF No. 18, 13.

In summary, the view of the Circuit *majority*—that § 1014 extends beyond lending—favors the Government; the view of the Circuit *minority*—that § 1014 does not extend beyond lending—may not be fatal to the Government's allegation. Accordingly, the Court does not dismiss on this ground at this time. In allowing the Government's allegation to survive, the Court does not take a final position on the issue of whether or not § 1014 applies in contexts beyond lending.

Regardless of whether or not § 1014 extends beyond lending, Claimants independently argue that the money in the defendant accounts cannot be "proceeds" of false statements because "the alleged false statements that form the basis of the Complaint's forfeiture claims were made when Anicorn and Artemus were already in possession of the funds held in the Claimed Accounts and *after those funds had been introduced to the United States banking system*." Reply, ECF No. 21, 20. In other words, because the banks accepted the deposits *before* the statements were made, Claimants argue that the banks' acceptance of those deposits cannot possibly have been a result of the statements.

Upon careful review of the Complaint, the Court notes that at least one deposit is alleged to have occurred *after* statements were made. The Complaint states:

> On September 19, 2017, City National Bank requested additional documents and information related to the Anicorn/Lucky Mark transactions. This time, HIGGINBOTHAM responded directly with a letter . . . HIGGINBOTHAM did not mention to City National Bank the 1MDB civil forfeiture proceedings discussed above, or MICHEL's intent to use the funds in these accounts to assist JHO LOW. Nor was JHO LOW's connection with the funds deposited into the ANICORN ACCOUNT disclosed to City National Bank.

13

Compl., ECF. No. 1, ¶ 42. In sum, Higginbotham's letter in response to the bank's request is alleged to have omitted information about Jho Low.

Omissions, such as the one alleged here, can qualify as false statements. In *United States v. Mangieri*, the defendant submitted nine applications for loans from a credit union; on each, he "failed to disclose thirteen outstanding debts (totaling over $30,000), as well as the fact that he had twice 'taken bankruptcy.'" *United States v. Mangieri*, 694 F.2d 1270, 1272 (D.C. Cir. 1982). The defendant was charged with—and convicted of—nine counts of making false statements to a financial institution under § 1014. *See id.* The D.C. Circuit affirmed the trial court's judgment. *Id.* at 1271.

The Complaint here claims that Higginbotham's letter to City National omitted information concerning Jho Low's connection to the funds that would have dissuaded City National from accepting deposits. *See* Compl., ECF No. 1, ¶ 42. Assuming the Complaint's allegations are true, Higginbotham's September 19, 2019 letter may have been a false statement because it omitted such information. On the day after the statement was made, September 20, 2019, City National is alleged to have accepted a thirty-million-dollar wire transfer into the Anicorn account. *See* Compl., ECF No. 1, ¶ 36. Because the transfer was allegedly accepted *after* Higginbotham's statement that omitted information about Jho Low, and because it can be reasonably inferred that City National would not have accepted the transfer had it known about the money's connection to Jho Low, it is possible that the thirty million dollars are "proceeds" of conduct that violated § 1014. As discussed in this Opinion's Bank Fraud section above, the increase in the account's value after the wire transfer can qualify as "proceeds" of a false statement regardless of whether the deposit constitutes a *trade* of two distinct pieces of property or a *shift in ownership* of the same property. *See supra* Sec. III A.

In addition to the thirty-million-dollar wire transfer into the Anicorn account at City National, other movements of money may have been facilitated by false statements. The Complaint states that the Anicorn and Artemus accounts at City National were closed on or about September 29, 2017. Compl., ECF No. 1, ¶ 44. New accounts for Anicorn and Artemus were then created at Morgan Stanley. *Id.* According to the Complaint:

> Shortly after the Anicorn and Artemus funds were moved to Morgan Stanley, and in connection with the opening of accounts in the names of Anicorn and Artemus at Morgan Stanley, HIGGINBOTHAM met with a Morgan Stanley employee in the District of Columbia to discuss the opening of these accounts. HIGGINBOTHAM and MICHEL also participated in a conference call with a Morgan Stanley representative.

*Id.* at ¶ 45. During these communications, Higginbotham and Michel allegedly omitted information about the money's connection with Jho Low. *Id.* It is possible that this omission influenced Morgan Stanley's decision to accept the money, but the Complaint's vague language makes the timeline unclear. The Complaint says the omissions occurred "shortly after" the funds were moved to Morgan Stanley. *Id.* If the time elapsed between the funds' movement and the omission is so short that the two can reasonably be thought of as parts of the same event, Morgan Stanley's decision to accept the funds may have resulted from the alleged omission. Accordingly, the funds could be proceeds of the alleged false statements by Higginbotham and Michel. As the record in this case develops, the timeline will become clearer. In ruling on the present Motion to Dismiss, the Court draws all reasonable inferences in favor of the non-moving party, the Government. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018) (citing *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009)). If, as the record

develops, it becomes clear that the funds cannot be the proceeds of the alleged false statements, Claimants may again move for dismissal on this ground.

In sum, because the Government has adequately alleged that false statements were made, that acceptance of deposits resulted from those false statements, and that the banks would not have accepted the deposits if they had known the information omitted by the false statements, the Court concludes that the Complaint "allege[s] enough facts such that the court may infer that the property is subject to forfeiture" under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) as proceeds of false statements. *See United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).

### C. Conspiracy

As a final ground for forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), the Complaint alleges that the Anicorn and Artemus funds constitute, are derived from, or are traceable to proceeds of conspiracy to commit bank fraud and false statements. The Government cites 18 U.S.C. § 317, which criminalizes activity by which "two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more such persons do any act to effect the object of the conspiracy." The Government also cites 18 U.S.C. § 1956(h), which states that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense." The target offenses of bank fraud and false statements are included among those defined in §§ 1956 and 1957.

Having already decided that target offenses of bank fraud and false statement are sufficiently pled, the Court now turns to whether the Complaint includes facts sufficient to allege a conspiracy to commit those target offenses. The Complaint identifies the alleged conspirators by

name, provides a timeline within which the alleged conspiracy existed, and describes the basic fraud and falsities used to induce American banks to accept Jho Low's money. As such, the Complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial" when it attempts to prove conspiracy. Fed. R. Civ. P. Supp. R. G(2)(f).

Assuming the Complaint's allegations are true, the funds named in this action may be proceeds of conspiracy to commit bank fraud and false statements. As discussed in this Opinion's Bank Fraud section above, the funds in the Anicorn and Artemus accounts may be proceeds of conspiracy regardless of whether the deposits constitute a *trade* of two distinct pieces of property or a *shift in ownership* of the same property. *See supra* Sec. III. A.

Because the Government has pled facts sufficient to allege the target offenses and a conspiracy to commit them, the Court concludes that the Complaint "allege[s] enough facts such that the court may infer that the property is subject to forfeiture" as proceeds of a conspiracy. *See United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).

### IV.  CONCLUSION

For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE Claimants' Motion to Dismiss. The Government has made sufficient allegations, which taken as true, allow the Court to infer that the funds at Morgan Stanley and Wells Fargo are subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) as property constituting, derived from, or traceable to proceeds of bank fraud, false statements, or conspiracy. An appropriate Order accompanies this Memorandum Opinion.

                                        /s/
                               COLLEEN KOLLAR-KOTELLY
                               United States District Judge